548 August 13, 2025 No. 721

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of T. A. G. II,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*and*

K. C.
and Cowlitz Indian Tribe,
*Respondents,*

*v.*

T. G.,
aka T. J. G.,
*Appellant.*

Multnomah County Circuit Court
19JU05952;
Petition Number
113766;
A186627 (Control), A186628

Linda Hughes, Judge pro tempore.

Argued and submitted June 18, 2025.

Tiffany Keast, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Oregon Public Defense Commission.

Inge D. Wells, Assistant Attorney General, argued the cause for respondent Department of Human Services. Also on the brief were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Justin Derhammer argued the cause for respondent Cowlitz Indian Tribe. Also on the brief was Alana Martin, Cowlitz Indian Tribe.

Erica Hayne Friedman and Youth, Rights & Justice filed the brief for respondent K. C.

Before Ortega, Presiding Judge, Lagesen, Chief Judge, and Joyce, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

In this juvenile dependency case, father appeals from the juvenile court's order accepting the Cowlitz Indian Tribe's order of a tribal customary adoption of child, ORS 419B.656, and the juvenile court's judgment of adoption, ORS 419B.656 and ORS 109.350. On appeal, father argues that the juvenile court's actions were in violation of the Oregon Indian Child Welfare Act (ORICWA), the federal Indian Child Welfare Act (ICWA), and the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *See* Indian Child Welfare Act of 1978, 25 USC §§ 1901 - 1963; Oregon Indian Child Welfare Act, Or Laws 2020, ch 14, §§ 1 - 66 (Spec Sess 1) (codifying new provisions at ORS chapter 419B.600 to ORS 419B.665 and amending portions of ORS chapters 350, 418, 419A, and 419B). Essentially, father asserts that the juvenile court was required to hold a contested evidentiary hearing on the criteria in ORS 419B.656, which governs acceptance of a tribe's order for tribal customary adoption, and to also require the proponents of the tribal customary adoption to prove beyond a reasonable doubt that conduct or circumstances existed that warrant termination of father's parental rights.[1] We conclude that neither state nor federal law required the evidentiary hearing that father argues for on appeal. Accordingly, we affirm.

Father's child, T, was born in August 2019 and is affiliated with the Cowlitz Indian Tribe via his maternal lineage. The Oregon Department of Human Services (ODHS) removed T from his parents shortly after his birth and petitioned for the juvenile court to take jurisdiction. In September 2020, the court entered a judgment establishing jurisdiction over T. As to father, the court based its jurisdiction on father's admissions that his "pattern of using controlled substances interferes with his ability to safely parent the child," and his "pattern of involvement in criminal activity and current incarceration interfere with his ability to safely parent and be a custodial resource for his child." The court granted the tribe's request to intervene as a party in September 2021.

---

[1] Substantially the same issue is currently pending before the Supreme Court in *Dept. of Human Services v. M. G. J.*, 329 Or App 101 (2023) (nonprecedential memorandum opinion), *rev allowed*, 372 Or 63 (2024).

In July 2022, the juvenile court changed T's plan from reunification to guardianship, and then, in January 2024, changed T's plan from guardianship to tribal customary adoption, a plan supported by the tribe, T's mother, and T. The court found that father "has not followed through with ODHS." The court continued the plan at review hearings in June and September of that year.

On the same date as the September review hearing, the tribe filed with the court a copy of the tribe's Indian Child Welfare Committee's Tribal Customary Adoption Process, which was also circulated to the parties. And, on November 14, 2024, the tribe filed with the court the notice it provided to the parties on November 7, notifying them that the Cowlitz Indian Child Welfare Committee had set a meeting for December 6, 2024, to consider T's tribal customary adoption. The notice stated, "Legal parties in the underlying case may send documents to the Cowlitz Indian Tribe's Indian Child Welfare Committee to consider during the Customary Adoption Process. Please review Section 1-6 of the Indian Child Welfare Committee's Tribal Customary Adoption Process for information and limitations pertaining to the submission of documents." Father submitted documents for the committee to consider.

On December 6, 2024, the committee adhered to the Indian Child Welfare Committee's Tribal Customary Adoption Process, considered all the submitted information, and voted unanimously to order that T's resource parents "shall have the physical, legal, and financial responsibility" for T. In issuing its order of tribal customary adoption for T, the committee determined that returning T to his parents "would likely result in serious detriment" and that customary adoption was in T's best interests. The order "suspended/modified" both parents' parental rights by transferring the physical, legal, and financial responsibility for T to his tribal customary adoption parents (TCA parents). However, the order also recognized "the vital importance of the connection between tribal children and tribal family" and outlined other rights, which included that TCA parents have the discretion to allow visitation with T's birth parents consistent with T's best interest, that TCA parents and birth parents

are to annually confirm or update the means to communicate with each other, that TCA parents are to provide annual updates to birth parents about T, and that T retains all rights of inheritance of birth parents. On December 19, the tribe filed the order of tribal customary adoption with the juvenile court.

On January 2, 2025, the day before the scheduled hearing in the juvenile court, father filed an objection to the acceptance of the tribal customary adoption. He argued that the court was required to hold a contested evidentiary hearing such as would be required to establish a permanent guardianship under ORS 419B.365, ICWA, and the Due Process Clause. Father asserted that the tribal customary adoption takes away his parental rights, akin to a permanent guardianship, without a meaningful opportunity to confront the information provided to the tribe and at a lower standard of proof than required by Oregon law or ICWA.

At the hearing the next day, the court remarked that it had received father's objections filed on January 2, "which was very untimely, might I just say, because this has been a plan for quite some time, and you were aware of that." After arguments on the merits of father's request for a contested hearing "that meets the standards required for Indian children for a permanent guardianship before the Court can put in place the Tribal Customary Adoption," the court again expressed frustration that father's objection was filed the day prior, when the plan had been set an entire year earlier, in January 2024, with an intervening review hearing in September 2024 at which time the January 2025 hearing had been set. Moving to the merits, the court ruled that Oregon law states that the court shall accept the tribal customary adoption order and that it would move forward with finalizing it. Father did not argue that any of the criteria enumerated in the statute for accepting a tribal customary adoption had not been met.

After considering the documents before it, the juvenile court entered an order accepting the tribal customary adoption. Among other things, the court found that the adoption was in T's best interests under ORS 419B.612, that the tribal customary adoption home study met the requirements of ORS

419B.656(2)(b), that the circumstances in ORS 419B.656(2)(c) were not present, and that the order of tribal customary adoption conforms with ORS 419B.656(3)(a)(C). The court then entered a judgment of tribal customary adoption, and terminated its wardship of T.

Father now appeals from the order and judgment, raising three assignments of error.

In his first assignment of error, father asserts that the juvenile court erred in rejecting his objections as untimely. He asserts that he could not have brought his objections sooner because he was objecting to the process for accepting the tribal customary adoption. We disagree with father's framing. Although the juvenile court expressed understandable frustration with father's late objection to the tribal customary adoption process—a process that had been moving forward for an entire year—the court did not base its ruling on untimeliness, but rather on its reading of ORS 419B.656(3) as requiring it to accept the order for tribal customary adoption if the criteria in the statute were met. Father's objections did not address those criteria. Because father's assignment of error does not address the basis for the court's ruling, we reject it.

In his second and third assignments of error, father argues that the juvenile court erred in accepting the order for tribal customary adoption and entering the judgment because it was in violation of ORICWA, ICWA, and due process.[2] Father's arguments, as presented, raise issues of statutory interpretation, which we review for legal error *Dept. of Human Services v. S. E. K. H.*, 283 Or App 703, 706, 389 P3d

___

[2] ODHS asserts that father failed to preserve his argument that ICWA preempts ORS 419B.656. Because we conclude ICWA does not apply in the manner argued by father, we do not reach any issues of preemption and, thus, also do not address preservation on that issue. The tribe asserts that father failed to preserve his argument that the tribal customary adoption is a termination of parental rights and cannot be ordered without meeting the standards in ICWA. We conclude, however, that that issue was sufficiently preserved by father's argument that ORICWA, ICWA, and due process required an evidentiary hearing akin to permanent guardianship, because the same standards apply. *See* ORS 419B.365(2) ("The grounds for granting a permanent guardianship are the same as those for termination of parental rights."). Finally, we agree with mother that, to the extent the appeal raises such issues, father did not preserve any argument that the juvenile court's findings on the criteria in ORS 419B.656 were insufficient or based on insufficient evidence.

1181 (2017). We thus apply our usual statutory construction methodology outlined in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), and we consider the text of the statute, in context, along with any helpful legislative history to "give effect to the intent of the legislature." *State v. Giron-Cortez*, 372 Or 729, 736, 557 P3d 505 (2024).

We first address father's arguments that are based in state law and provide an overview of tribal customary adoption. In 2021, the Oregon Legislature enacted the legislation that made tribal customary adoption an available permanency plan in a dependency proceeding involving an Indian child. Or Laws 2021, ch 398, § 65a. A tribal customary adoption, as defined in ORS 419B.656(1), means "the adoption of an Indian child, by and through the tribal custom, traditions or law of the child's tribe, and which may be effected without the termination of parental rights." Under ORS 419B.476(2)(e), a juvenile court shall, at a permanency hearing for an Indian child whose case plan is something other than reunification,

> "make a finding whether, after the department's consultation with the child's tribe, and, if the tribe appears at the hearing, the court's direct consultation with the tribe, tribal customary adoption, as described in ORS 419B.656, is an appropriate permanent placement for the child if reunification is unsuccessful."

If the court determines that tribal customary adoption should be the child's permanency plan, the court must determine "whether one of the circumstances in ORS 419B.498(2) is applicable"—that is, circumstances under which ODHS may not file a petition for termination of parental rights.[3]

---

[3] As applicable here, ORS 419B.498(2) provides:

"(2) The department shall file a petition to terminate the parental rights of a parent in the circumstances described in subsection (1) of this section unless:

"* * * * *

"(b) There is a compelling reason, which is documented in the case plan, for determining that filing such a petition would not be in the best interests of the child or ward. Such compelling reasons include, but are not limited to:

"* * * * *

"(C) If the child is an Indian child, the court finds that tribal customary adoption, as described in ORS 419B.656, is an appropriate permanent plan

ORS 419B.476(5)(g). One of those circumstances is "[i]f the child is an Indian child, the court finds that tribal customary adoption, as described in ORS 419B.656, is an appropriate permanent plan for the child and the Indian child's tribe consents to the tribal customary adoption." ORS 419B.498(2)(b)(C). Once the plan for the child is tribal customary adoption, "the court shall request that the tribe file with the court a tribal customary adoption order or judgment evidencing that the tribal customary adoption has been completed." ORS 419B.476(7)(d)(A).[4]

In addition, ORS 419B.656(2) imposes certain requirements once the court changes the child's permanency plan based on its determination that tribal customary adoption is in the best interests of the Indian child, as provided in ORS 419B.612,[5] and the tribe consents. At that point, ODHS is required to provide the tribe with a written report on the child containing specified information and the court is required to "accept a tribal customary adoptive home study conducted by the Indian child's tribe if the home

for the child and the Indian child's tribe consents to the tribal customary adoption[.]"

[4] ORS 419B.476(7)(d) also provides timing requirements for the court with respect to the tribe's completion of the tribal customary adoption and filing of the order with the court. Because father does not challenge the tribal customary adoption based on those requirements, we do not address them here.

[5] ORS 419B.612 provides:

"In a child custody proceeding involving an Indian child, when making a determination regarding the best interests of the child under ORS 109.266 to 109.410 or 419B.600 to 419B.654, ORS chapter 419B, the Indian Child Welfare Act (25 U.S.C. 1901 et seq.) or any regulations or rules regarding ORS 109.266 to 109.410 or 419B.600 to 419B.654, ORS chapter 419B, or the Indian Child Welfare Act, the court shall, in consultation with the Indian child's tribe, consider the following:

"(1) The protection of the safety, well-being, development and stability of the Indian child;

"(2) The prevention of unnecessary out-of-home placement of the Indian child;

"(3) The prioritization of placement of the Indian child in accordance with the placement preferences under ORS 419B.654;

"(4) The value to the Indian child of establishing, developing or maintaining a political, cultural, social and spiritual relationship with the Indian child's tribe and tribal community; and

"(5) The importance to the Indian child of the Indian tribe's ability to maintain the tribe's existence and integrity in promotion of the stability and security of Indian children and families."

study" includes the features set out in ORS 419B.656(2)(b)(A) to (D). The statute further provides that the court may not accept a tribal customary adoption "if any adult living in the proposed adoptive placement has a felony conviction for child abuse or neglect, spousal abuse, crimes against a child, including child pornography, or a crime involving violence." ORS 419B.656(2)(c).

Once the tribe completes the tribal customary adoption, ORS 419B.656 also sets out the process for the juvenile court to accept the tribal customary adoption and enter a judgment of adoption for the child, which terminates the court's wardship over the child. Under ORS 419B.656(3):

"(a)   The juvenile court shall accept an order or judgment for tribal customary adoption that is filed by the Indian child's tribe if:

"(A)   The court determines that tribal customary adoption is an appropriate permanent placement option for the Indian child;

"(B)   The court finds that the tribal customary adoption is in the Indian child's best interests, as described in ORS 419B.612; and

"(C)   The order or judgment:

"(i)   Includes a description of the modification of the legal relationship of the Indian child's parents or Indian custodian and the child, including contact, if any, between the child and the parents or Indian custodian, responsibilities of the parents or Indian custodian and the rights of inheritance of the parents and child;

"(ii)   Includes a description of the Indian child's legal relationship with the tribe; and

"(iii)   Does not include any child support obligation from the Indian child's parents or Indian custodian.

"(b)   The court shall afford full faith and credit to a tribal customary adoption order or judgment that is accepted under this subsection."

Once the tribal customary adoption is accepted by the court as provided above, ORS 419B.656(4) and (5) set out the procedure by which the juvenile dependency proceeding

shall conclude. The court is to proceed as provided in ORS 109.350and enter a judgment of adoption,[6] and also "include a statement that any parental rights or obligations not specified in the judgment are transferred to the tribal customary adoptive parents and a description of any parental rights or duties retained by the Indian child's parents, the rights of inheritance of the child and the child's parents and the child's legal relationship with the child's tribe." ORS 419B.656(4)(d). The court's jurisdiction over the Indian child terminates once the court enters the judgment of adoption. ORS 419B.656(4)(f); ORS 419B.328(2)(d). The statute also expressly provides that "[a] tribal customary adoption under this section does not require the consent of the Indian child or the child's parents," ORS 419B.656(4)(e), and that "[a]ny parental rights or obligations not specifically retained by the Indian child's parents in the juvenile court's adoption judgment are conclusively presumed to transfer to the tribal customary adoptive parents," ORS 419B.656(5).

Father argues that the text, context, and legislative history of ORS 419B.656 support his reading of the statute that the juvenile court "must receive evidence and independently assess that evidence to itself determine whether the [tribal customary adoption] satisfies the ORS 419B.656 criteria and ultimately whether to accept the [tribal customary adoption] and enter an adoption judgment." Father further argues that where the tribal customary adoption deprives a parent of all parental rights, as he maintains happened in this case, the court may accept the tribal customary adoption "only upon proof beyond a reasonable doubt that the parental rights of the Indian child's parent should be terminated according to Oregon statute and, as required by ICWA, testimony by a qualified expert that continued

---

[6] ORS 109.350(1) provides:

"If, upon a petition for adoption or readoption duly presented and consented to, the court is satisfied as to the identity and relations of the persons, that the petitioner is of sufficient ability to bring up the child and furnish suitable nurture and education, having reference to the degree and condition of the parents, and that it is fit and proper that such adoption or readoption be effected, a judgment shall be made setting forth the facts, and ordering that from the date of the judgment the child, to all legal intents and purposes, is the child of the petitioner."

ORS 109.350(2) sets out what the judgment of adoption must include if the child is an Indian child.

custody of the child by the parent is likely to result in serious emotional or physical damage."

We reject father's reading of ORS 419B.656. It is evident from the text and context of that statute that the legislature did not intend that a tribal customary adoption would require the juvenile court to receive evidence that proves a circumstance sufficient to terminate parental rights. The legislature expressly provided that ODHS is not to file a petition to terminate parental rights when the court determines that the appropriate permanency plan is tribal customary adoption and the tribe consents. ORS 419B.476(5)(g); ORS 419B.498(2)(b)(C). The legislature also expressly provided that any parental rights of the birth parents that are not specifically retained transfer to the tribal customary adoptive parents, ORS 419B.656(5), without requiring proof of circumstances sufficient to terminate parental rights, ORS 419B.656(3) and ORS 419B.656(4)(d), and without requiring the birth parent's consent, ORS 419B.656(4)(e). Notably, nothing in the statute itself authorizes a court to terminate parental rights under state law. Rather, the judgment of adoption sets out the rights or obligations retained by the birth parents pursuant to the tribal customary adoption completed by the tribe, a separate sovereign, and gives full faith and credit to that determination.

We also do not read ORS 419B.656 to require more than what father was afforded in this case on the issue of whether the criteria were met. A juvenile court is required to accept a tribal customary adoption if "the court determines that tribal customary adoption is an appropriate permanent placement option for the Indian child," "[t]he court finds that the tribal customary adoption is in the Indian child's best interests, as described in ORS 419B.612," and the order of tribal customary adoption includes the required information. ORS 419B.656(3)(a). Additionally, the court was required to accept the tribe's home study, as long as it included the required features. ORS 419B.656(2)(b). The record before the juvenile court at the hearing was sufficient to make those findings, and father did not offer any evidence at the hearing on those criteria, nor did father argue that the criteria were not met. It is unclear to us what father

is asserting on appeal was required below for the court to find the ORS 419B.656 criteria, given the record in *this* case. All that father argued to the juvenile court was for an evidentiary hearing that meets the standards for permanent guardianship for an Indian child. However, that type of hearing is not required by ORICWA on the acceptance of a tribal customary adoption.

Thus, analyzing the text in its context, the statute gives effect to the legislature's intent to establish a permanency option that recognizes the importance of tribal self-governance. In ORICWA, the legislature expressly stated its policy is "to protect the health and safety of Indian children and the stability and security of Indian tribes and families by promoting practices designed to prevent the removal of Indian children from their families and, if removal is necessary and lawful, to prioritize the placement of an Indian child with the Indian child's extended family and tribal community." ORS 419B.600. The legislature further "recognize[d] the inherent jurisdiction of Indian tribes to make decisions regarding the custody of Indian children." *Id*.; *see also* ORS 419B.663 ("The juvenile court shall give full faith and credit to the public acts, records and judicial proceedings of an Indian tribe applicable to an Indian child custody proceeding."). Tribal customary adoption furthers that policy because it is a permanency option that is completed by the Indian child's tribe according to the "tribal custom, traditions or law of the child's tribe." ORS 419B.656(1). The legislature's decision to create a separate permanency option that dictates a separate process taking place within the Indian child's tribe's jurisdiction supports the conclusion that the legislature intended to empower tribes and tribal courts to be the active decisionmaker in the tribal customary adoption of an Indian child, with the state juvenile court accepting, and giving full faith and credit to, that decision as long as it meets the requirements of ORS 419B.656. In adhering to that process in this case, the juvenile court did not err under ORICWA.

Having concluded that the juvenile court did not violate ORICWA, we turn to father's arguments that are grounded in federal law. We understand father to be essentially making two separate, but related, arguments: that we

must read ORICWA to require the same protections as a termination of parental rights proceeding under ORICWA or ICWA because failing to do so would result in a violation of father's due process rights; and, alternatively, that the juvenile court's acceptance of the tribal customary adoption violated ICWA because it effectively terminated father's parental rights in the absence of the required proof and, thus, ICWA preempts conflicting state law.

We reject both of father's arguments for the primary reason that they do not address the full faith and credit a state court is required to give to the tribe's sovereign role in determining the parameters of T's tribal customary adoption. It was not, and is not, the role of an Oregon juvenile court to second-guess those parameters under a state involuntary process for permanent guardianship or termination of parental rights. Our conclusion is supported by the text and context of ICWA. And, to the extent father's arguments are grounded in due process and not the requirements in ICWA, father has not provided us with a legal basis on which we could conclude that he was constitutionally entitled to the type of evidentiary hearing that he seeks.

ICWA was enacted for the purpose of protecting tribal communities and families from and rectifying a pattern of harmful state court interference in relationships essential to the maintenance of tribal sovereignty. *See* 25 USC § 1901 (recognizing "that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children" and "that the States *** have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families"). To that end, an Indian child's parent's rights cannot be terminated without meeting the requirements in 25 USC section 1912(f), which provides that

> "[n]o termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."

The problem with father's argument here is that the reference to "such proceeding" in ICWA is a reference to "any involuntary proceeding in State court." 25 USC § 1912(a). By its plain terms, ICWA does not apply to proceedings in tribal court, which includes the tribal committee in this case.[7] 25 USC § 1912(a); *see also* 25 CFR § 23.103(b)(1) (stating that "ICWA does not apply to *** [a] Tribal court proceeding").

Here, it was the tribe, through its own tribal process, that "suspended/modified" father's parental rights to T in the tribal customary adoption order. Simply stated, ICWA does not apply to the change in father's parental rights of T accomplished through the tribe's tribal customary adoption. The state proceeding, under ORS 419B.656, to accept and give full faith and credit to a tribal customary adoption does not allow the juvenile court to decide for itself whether and to what extent the tribal customary adoption should modify a parent's parental rights. That is a decision for the tribe. Consequently, a state involuntary proceeding terminating father's parental rights is not implicated. However, giving full faith and credit to the tribe's decision to modify father's parental rights is consistent with ICWA, which provides:

> "The United States, every State, every territory or possession of the United States, and every Indian tribe shall give full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records, and judicial proceedings of any other entity."

25 USC § 1911(d); *accord* ORS 419B.663 ("The juvenile court shall give full faith and credit to the public acts, records and judicial proceedings of an Indian tribe applicable to an Indian child custody proceeding."). The purpose of such a

---

[7] A "tribal court" is defined to include an administrative body such as the Cowlitz Indian Tribe's Indian Child Welfare Committee. 25 USC § 1903(12) ("'[T]ribal court' means a court with jurisdiction over child custody proceedings and which is either a Court of Indian Offenses, a court established and operated under the code or custom of an Indian tribe, or any other administrative body of a tribe which is vested with authority over child custody proceedings."); *see also* ORS 419B.603(13) ("'Tribal court' means a court with jurisdiction over Indian child custody proceedings and that is either a Court of Indian Offenses, a court established and operated under the code or custom of an Indian tribe or any other administrative body of a tribe that is vested with authority over Indian child custody proceedings.").

mandate would be eroded if the juvenile court relitigated the conclusive proceedings of a tribe on the parameters of T's tribal customary adoption. We thus reject the foundational premise underlying father's arguments.

Apart from arguing for the juvenile court to conduct its own termination of parental rights hearing, either based on ORICWA or ICWA, which we conclude do not apply in that manner, father fails to adequately explain what additional process he was due based on the Due Process Clause. For the first time, in his reply brief, father argues that the juvenile court could not give full faith and credit to an order that violated his due process rights, and summarily asserts that the tribe's specific process violated his rights. However, father refers to only the process afforded under ICWA as the one he was due without explaining why that is so based on due process jurisprudence. Thus, we do not further address father's arguments.

In sum, we affirm the juvenile court's order accepting the tribe's customary tribal adoption and judgment of tribal customary adoption.

Affirmed.